UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIBARDO MORENO-GONZALEZ,
a/k/a HUBER MORENO,

v.                                    Case No. 8:05-cr-83-T-24MSS
                                              8:07-cv-1201-T-24MSS

UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court upon Defendant Huber Moreno-Gonzalez's (hereinafter "Moreno") amended motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. cv-6; cr-125).  Because review "of the motion and the file and records of the case conclusively show that the defendant is entitled to no relief," the Court will not cause notice thereof to be served upon the United States Attorney but shall proceed to address the matter. *See* 28 U.S.C. § 2255.

PROCEDURAL HISTORY

On June 3, 2005, Moreno pled guilty, without a plea agreement, to 1) conspiracy to possess with intent to and distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C. §§ 1903(a), 1903(g), and 1903(j) and Title 21 U.S.C. § 960(b)(1)(B)(ii) (Count One); and 2) possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C.

§§ 1903(a) & 1903(g) and 18 U.S.C. 2; 21 U.S.C. § 960(b)(1)(B)(ii) (Count Two). (Doc. cr-61; cr-112 [Transcript of Change of Plea Hearing]).

On August 30, 2005, the Court sentenced Moreno-Gonzalez to a total term of one hundred and thirty-five months incarceration as to Counts One and Two, with the sentences to run concurrent to each other. Judgment was entered that same day. (Doc. cr-96; cr-103 [Transcript of Sentencing Hearing]).

On September 2, 2005, Moreno filed a Notice of Appeal. (Doc. cr-97). On April 13, 2006, the United States Court of Appeals for the Eleventh Circuit affirmed the judgment and conviction, stating:

Appellant Huber Moreno appeals his 135-month sentence for conspiracy to possess with intent to distribute cocaine while aboard a vessel subject to United States jurisdiction, in violation of 46 U.S.C. App. § 1903(a), (g),(j), 21 U.S.C. § 960(b)(1)(B)(ii), 18 U.S.C. § 2, and possession with intent to distribute cocaine, in violation of 46 U.S.C. App. § 1903(a), (g), 21 U.S.C. § 960(b)(1)(B)(ii). On appeal, Moreno argues that his only function was as a mechanic, and he was a last-minute hire on the crew of the "go-fast" vessel ("GFV") that the United States Coast Guard intercepted, searched, and from which it recovered 1,968 kilograms of cocaine. He contends that he had no interest in the cocaine, and was a low-level individual in the overall conspiracy. Based on his participation, Moreno argues that the guidelines mandated his base offense level be capped at 30 under U.S.S.G. § 2D 1.1 (a)(3). He concludes that an adjustment for his small role in the offense is appropriate under an advisory guidelines system, and the failure to grant him one stifles Congress's intent that low-level traffickers receive one.

Normally, we do not consider arguments raised for the first time on appeal. *United States v. Prichett,* 898 F.2d 130, 131 (11th Cir. 1990) (citation omitted); *see also United States* v. *Brokemond,* 959 F.2d 206,210 (11th Cir. 1992) (applicant precluded from raising issue related to U.S.S.G. § 3E1.1 reduction when he did not file an objection to the PSI and did not object when the district court did not grant the departure). This rule applies to sentencing proceedings. *Prichett,* 898 F.2d at 131 (citation omitted). In addition, 18 U.S.C. § 3742(a) does not authorize us to consider a defendant's appeal of the district court's discretionary decision not to apply a downward departure. *United States* v. *Winingear,* 422 F.3d 1241,1245 (11th Cir. 2005); *see also*

*United States* v. *Wright,* 895 F.2d 718, 720 (11th Cir. 1990) (§ 3742 does not cognize a claim that the district court failed to depart further).

To the extent that Moreno argues that the district court erred in failing to depart downward from the guideline range, we do not have authority under § 3742(a) to consider his claim. To the extent that Moreno's appeal may be considered to be asserting that the district court erred in failing to provide a minor role reduction, his arguments are also not properly before us. At sentencing, Moreno argued that the district court should depart from the applicable guideline range, partly because he was not as involved with the conspiracy as the other members of the GFV's crew. He did not argue that he was entitled to a reduction as a minor participant or otherwise object to the PSI's failure to provide such a reduction. Accordingly, any argument regarding a mitigating role reduction under U.S.S.G. §3B1.2 is not properly before us. For the above-stated reasons, we affirm Moreno's sentence.

(Doc. cr-118).

On July 9, 2007, Moreno timely filed a 28 U.S.C. § 2255 motion to vacate. (Doc. cv-1; cr-123). The Court denied the motion, without prejudice to his filing an amended motion to vacate.  In the order dismissing the original motion to vacate, the Court emphasized: "the Court will not consider claims raised in a memorandum of law that are not set out on the motion to vacate form."  (Doc. cv-4; cr-124).  On July 30, 2007, Moreno filed an amended motion to vacate upon which he is proceeding.  (Doc. cv-6; cr-125). He also filed a lengthy memorandum in support and an affidavit in support of the motion. (Doc. cv-7, cv-8). Moreno raises four grounds of ineffective assistance of trial counsel in his motion to vacate.

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Defendant must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland*'s two-part test requires a Defendant to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The two-pronged Strickland test is applicable to ineffective assistance of counsel claims arising out of the  process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill,* 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill,* 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* The best way to evaluate whether there is a reasonable probability a defendant would have insisted on going to trial is to determine whether defendant had available a defense that would likely have borne fruit at trial.

*Upshaw v. United States*, 2008 WL 638261 at *1 (M.D. Fla., Mar. 5, 2008) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Discussion

Ground One

Moreno alleges that his trial counsel was ineffective during the sentencing process when he failed to move for downward adjustment under U.S.S.G. § 3B1.2 to reflect Moreno's minor role in the offense.  In support, Moreno contends:

> When the Presentence Report was prepared, the Probation Officer recommended finding a total offense level 33, a Criminal History I, and a guideline sentencing range of 135-168 months incarceration. The guidelines sentencing range did not include a downward adjustment for role in the offense, i.e. a downward adjustment under U.S.S.G. § 3B1.2.  This was in spite of the fact that Mr. Moreno was charged with all of the cocaine involved in the offense and the evidence showed that Mr. Moreno was clearly the least culpable of the crew members.  The evidence showed that he had only been hired at the last minute by the owner of the boat as a mechanic for one trip. Counsel could have but did not move for downward adjustment U.S.S.G. § 3B1.2 to reflect his "minor role" in the offense.  Mr. Moreno was prejudiced from the unprofessional omissions of counsel because, absent said omissions, there is a reasonable probability that the outcome of his sentencing process would have been different.  More specifically, but for counsel's unprofessional omissions there is a reasonable probability that the Court would have granted him a downward adjustment under U.S.S.G. § 3B1.2 to reflect his "minor role" in the offense.  Alternatively, if counsel would have timely moved for the downward adjustment for minor role, Mr. Moreno's direct appeal challenge to the denial of the downward adjustment would have been considered by the Court of appeals under the "harmless error" standard of Fed. R. Crim. P. 52(a) instead of Fed. R. Crim. P. 52(b).

In sum, Moreno alleges that counsel was ineffective when he did not move for a U.S.S.G. § 3B1.2 downward adjustment at sentencing "to reflect" Moreno's minor role.  He claims that if counsel had timely moved for the downward adjustment for minor role, the Eleventh Circuit would have applied the Rule 52(a) harmless error standard rather than the

Rule 52(b) plain error standard to his minor role claim on direct appeal. *See Federal Rules of Criminal Procedure, Rule 52.*

Moreno's claim has no merit because the facts of this case demonstrate that Moreno did not play a minor role in the offense.  Under U.S.S.G. § 3B1.2, a district court is authorized to decrease a defendant's offense level by four levels if the defendant was a "minimal participant" in the crime, by two levels if he was a "minor" participant, and by three levels if he falls somewhere in between. A minimal participant is one who is plainly among the least culpable of those involved in the offense, while a minor participant is one who is less culpable than most other participants, but whose role could not be described as minimal. U.S.S.G. § 3B1.2, cmt. n. 4-5 (2001).

A determination of a defendant's role in the offense is heavily dependent on the facts of the particular case. See U.S.S.G. § 3B1.2, cmt. background (2001); *United States v. Rodriguez DeVaron,* 175 F.3d 930, 938 (11th Cir.1999) (en banc). The proponent of the downward adjustment bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. *Id.* at 939. See also *United States v. Ryan*, 289 F.3d 1339, 1348 (11th Cir.2002) ( per curiam ). In evaluating whether the defendant's role was minor, a district court first considers the defendant's role in the offense against the relevant conduct for which he has been held accountable. "Only if the defendant can establish that [ ]he played a relatively minor role in the conduct for which [ ]he has already been held accountable-not a minor role in any larger criminal conspiracy-should the district court grant a downward adjustment for minor role in the offense." *United States v. Rodriguez DeVaron*, 175 F.3d at 944. The district court may also compare the defendant's culpability to that of

6

other participants in the offense "who are involved in the relevant conduct attributed to the defendant." *Id.* at 945.

Because Moreno cannot show that he played a relatively minor role in the conduct, he cannot show that his attorney was ineffective for failing to argue, at the sentencing hearing, for a downward departure based on minor role.  The facts show that Moreno was hired to be mechanic on the go-fast boat, and he was to be paid a total of 50,000,000 pesos ($21,500) for the trip, more than the other members of the crew. (Doc. cr-103 at p. 24). For example, crew-member Santa was to be paid 40,000,000 pesos, and crew-member Cueva was to be paid 10,000,000 pesos total. (Doc. cv-103 at p. 24-25). Moreno's responsibility was to keep the boat engine in repair. Moreno had this responsibility because he repaired engines for his regular work in Colombia, and he was qualified to be the mechanic on the go-fast boat. (Doc. cr-103 at p. 27).

Other than his argument on the law, Moreno has not presented any argument to show how his role in the offense was less culpable than that of Santa and Cueva.  Moreno has not demonstrated that he was less than an average participant on the vessel.

It is true that, at Moreno's sentencing hearing, defense counsel did not argue for a downward adjustment based on Moreno's minor role in the offense;  the facts of the case did not support an argument for a minor role.  However, defense counsel did argue that Moreno had made only this one boat trip and that "he had no intentions of going on that trip"  when Moreno was recruited to do so.[1]  He argued that Moreno did not intend to commit the crimes for which he was indicted; that Moreno was a mechanic and that he was

---

1 Moreno's original defense was that he was kidnaped and made to go on the  trip. At the sentencing hearing, Moreno acknowledged that this claim was not truthful. (See Doc. cr-103 at 21).

going on the trip to fix a boat "like he had done -- he's a mechanic.  That 's what he does." (Doc. cr-103 at p. 10).

Defense counsel further argued that "in the grand picture of this, uh, for him to be sentenced to five to six years more than his co-defendants, uh, I don't believe is fair." (Doc. cr-103 at pp. 11-12). Counsel asked the Court to fashion a sentence that was similar to the sentences of the co-defendants.[2]  (Doc. cr-103 at p. 29).

Moreno has not demonstrated that his role in the conspiracy was any less significant than that of his co-conspirators. See United States Sentencing Guidelines Manual § 3B1.2 cmt. n. 3(C) (2001). Given that there is no indication in the record that Moreno's role was substantially less culpable than the average participant in the conspiracy, and Moreno has failed to present any factual support for his claim that he was entitled to a minor role downward adjustment, Moreno's claim that trial counsel was ineffective for failing to seek a minor role adjustment at sentencing fails. Moreno has not established that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, because even if trial counsel had argued for a downward adjustment based on Moreno's role in the offense, the Court would not have granted the reduction, based on the facts of the case. Having failed to meet the prejudice prong of *Strickland* , Moreno has not established that he is entitled to relief on ground one.

_____

2 Co-defendants Edwin Reina Santa and Jamie Cueva received downward departures for substantial assistance pursuant to section 5K1.1 of the United States Sentencing Guidelines.  Co-defendant Jesus Betancu was the captain of the boat and did not receive a downward departure for substantial assistance.

Ground Two

Moreno alleges that trial counsel was ineffective during the pretrial and plea process, when counsel failed to timely move for dismissal of the Indictment, suppression of evidence or a downward departure under U.S.S.G. § 5K2.0, based on the Government's violation of Mr. Moreno's rights under Article 36(1)(b) of the Vienna Convention on Consular Relations.

In support, Moreno contends:

> Mr. Moreno is a citizen of Colombia.  At no time between his arrest and his arraignment was Mr. Moreno ever advised of his rights under Article 36(1)(b) of the Vienna Convention on Consular Relations.  More specifically, at no time between the arrest of Mr. Moreno and his arraignment was he ever advised of his rights to communicate with the consulate of Colombia.  But for the government's failure to advise Mr. Moreno of his rights under Article 36, he would have timely communicated with his consulate.  He would have been able to discuss his case with people from the consulate who spoke his own native language and were knowledgeable of laws and criminal procedures in the United States;  as a result, he would have been able to make a more informed decision as to whether to plead guilty or proceed to trial.

These claims also have no merit.

## A. Ineffective Assistance of counsel -- Pretrial and Plea

Moreno claims that counsel was ineffective for moving to dismiss the indictment and suppress the evidence because the Government failed to advise Moreno of his Vienna Convention rights.  Moreno claims that if the Government had advised him of his right, under the Vienna Convention,  to contact the Colombian Consulate, he would have timely communicated with the consulate.  He would have discussed his case with people from the consulate who spoke his native language and knew the laws of the United States, and Moreno would have made a better informed decision as to whether to plead guilty or proceed to trial.

9

Moreno has not shown that he was prejudiced because of the Government's alleged failure to advise him of his Vienna Convention rights. The Vienna Convention does not prescribe specific remedies for violations of Article 36, and does not guarantee that the consulate would have provided assistance, even had Moreno contacted the consulate. Moreno's claim fails because he does not offer any facts to support his contention that the consulate or staff would have discussed his case with him. His claim is  speculative.

Furthermore, counsel was not ineffective for failing to move to dismiss the indictment and/or to suppress the evidence based on Moreno's not having been informed of his rights under the Vienna Convention because violation of the Vienna Convention on Consular Relations does not require suppression of evidence or dismissal of the indictment. *See United States v. Cordoba-Mosquera*, 212 F.3d 1194, 1196 (11th Cir. 2000), *cert. denied, Arnulfo Zuniga v. United States*, 531 U.S. 1131 (2001). *See also*, *United States v. Duarte-Acero*, 296 F.3d 1277 (11th Cir.) (a criminal defendant could not seek to have an indictment dismissed based on an alleged violation of Article 36 of the Vienna Convention), *cert. denied, Duarte-Acero v. U.S.,* 537 U. S. 1038 (2002). The *Duarte-Acero* Court determined that the Convention's preamble "made it clear" that the Vienna Convention was not intended to benefit individuals.

The Vienna Convention was drafted in 1963 for the purpose, as stated in its preamble, of "contribut[ing] to the development of friendly relations among nations, irrespective of their differing constitutional and social systems." 21 U.S.C. 77 at 79. Article 36 of the Vienna Convention provides that upon arrest, a foreign national has the right to contact the consular post of his home country, and that the arresting authorities must inform the detainee of that right. *Id.* at art. 36(a)(b). The Supreme Court has not definitively

10

decided the issue but has stated that the Vienna Convention "arguably confers on an individual the right to consular assistance following an arrest." *Breard v. Greene*, 523 U.S. 371, 376 (1998). More recently, in *Sanchez-Llamas v. Oregon*, 126 S.Ct. 2669 (2006), the Supreme Court opted to leave open-ended the question of whether the Vienna Convention created enforceable individual rights, assuming without deciding that the Vienna Convention did create such rights. *Id.* at 2677. In *Sanchez-Llamas*, the Supreme Court held that, *assuming* the Vienna Convention created enforceable individual rights, suppression of the evidence via the exclusionary rule was not an appropriate remedy for violation of the Vienna Convention. *Id.* at 2678-79 (emphasis added). The Supreme Court's analysis was crafted specifically for the remedy of suppression of evidence via the exclusionary rule, and not for any other form of remedy. *Id.* at 2680-82.

Even if this Court were to assume that the Vienna Convention created an individually enforceable right, an individual claiming a violation of the Convention must show prejudice to prevail on his claim. *See Medellin v. Texas*, ---S.Ct.---,  2008 WL 762533 at *11 n4 (Mar. 25, 2008) (as in *Sanchez-Llamas*, 548 U.S., at 342-343, 126 S.Ct. 2669, we thus assume, without deciding, that Article 36 grants foreign nationals "an individually enforceable right to request that their consular officers be notified of their detention, and an accompanying right to be informed by authorities of the availability of consular notification.");  *Medellin v. Dretke*, 544 U.S. at 665 n.3 (citing and quoting *Breard v. Greene*, 523 U.S. 371, 375-77 (1998) ("a successful Vienna Convention claimant likely must demonstrate prejudice"); *United States v. Duarte-Acero*, 132 F.Supp.2d 1036 (S.D. Fla. 2001), *aff'd,* 296 F.3d 1277 (11th Cir.2002), *cert. denied*, 537 U.S. 1038 (2002); *Ortiz v. United States*, 2005 WL 2129191, at *8 (M.D. Fla. Sept. 2, 2005) (The Eleventh Circuit has declined to specifically

find that the Vienna Convention creates a private cause of action enforceable by individuals, but has held that even if it does, no remedy is available absent a showing of prejudice);   *See also United States v. Rios Balderrama*, 2004 WL 2595940, at *5 (W.D. Tex. Nov.12, 2004) (defendant failed to show prejudice from alleged violation of Vienna Convention); *Deoca v. United States*, 2004 WL 96741, at *6 (D. Del. Jan.16, 2004) (violation of Vienna Convention not grounds for federal habeas relief if petitioner does not show how alleged violation affected plea agreement); *Hernandez v. United States*, 280 F.Supp.2d 118, 124-25 (S.D. N.Y. 2003) (petitioner must explain how consultation with consulate would have changed actions that he took in the case or altered the outcome of the case in some way).

Moreno has not met the *Strickland* prejudice prong because he has not shown there was a reasonable probability that, but for defense counsel's actions in failing to move to dismiss the indictment or suppress the evidence based on the Government's alleged violation of the Vienna Convention, the result of his criminal proceeding would have been different, especially when Moreno pled guilty *because he was guilty*.   Moreno has failed to demonstrate or even allege resulting prejudice as required by *Strickland*. In this instance, Moreno, who readily admitted his guilt, has offered no evidence that his consulate could have offered any assistance not provided by his counsel. This claim fails to meet both prongs of *Strickland*; that is, Moreno has failed to show any deficient performance or resulting prejudice on this claim.

## B. Failure to move for U.S.S.G. § 5K2.0 downward departure

Moreno alleges that counsel was ineffective for failing to move, at the sentencing hearing, for a U.S.S.G. § 5K2.0 downward departure based on the Government's failure

to inform Moreno of his Vienna Convention right to contact his consulate.  Moreno's claim fails because he has not supported his contention with any facts to show that an alleged violation of a defendant's Vienna Convention right to contact his consulate supports a downward departure under U.S.S.G. § 5K2.0.

The Eleventh Circuit recognizes a distinction between guided and unguided departures. *United States v. Adams*, 316 F.3d 1196, 1198 (11th Cir.2003) (citing *United States v. Smith*, 289 F.3d 696, 710 (11th Cir.2002)). Unguided departures, which proceed under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5K2.0 , are those not explicitly provided for in the Guidelines. See *id.* at 1199.

In imposing a sentence outside the sentencing guidelines range, the sentencing court must determine what, if any, factor makes the case atypical, and whether that factor should result in a different sentence.  In imposing a sentence outside the advisory sentencing guidelines range, circumstances justifying the departure must significantly differ from the "heartland" of cases covered by a guideline.  In determining whether a case falls outside the heartland of a particular guideline, to justify departure from the advisory sentencing guidelines, the Court assesses the facts of the case and compares those facts to the facts of other cases that fall within the guideline's heartland. Departures from sentencing guidelines should only occur in unusual cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime. *United States v. Miller*, 146 F.3d 1281 (11th Cir.), *cert. denied, Miller v. United States,* 525 U.S. 1127 (1998);  *see also*, *United States v. Kapelushnik*, 306 F.3d 1090 (11th Cir. 2002). For the following reasons, Moreno has not shown that there is anything about him as a

13

defendant or about the circumstances surrounding the commission of the crime to entitle him to a downward departure under U.S.S.G. § 5K2.0.

Moreno pled guilty to 1) conspiracy to possess with intent to and distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C. §§ 1903(a), 1903(g), and 1903(j) and Title 21 U.S.C. § 960(b)(1)(B)(ii) (Count One); and 2) possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C. §§ 1903(a) & 1903(g) and 18 U.S.C. 2; 21 U.S.C. § 960(b)(1)(B)(ii) (Count Two). (Doc. cr-61; cr-112 [Transcript of Change of Plea Hearing]).  The offense occurred on or about February 21, 2005, and the guidelines in effect at the time of sentencing (the November 2004 edition) provided specific penalties for these charges.  Moreno has totally failed to show that his case differs from virtually hundreds, if not thousands, of other defendants who have been charged with the same offenses, and to whom the Vienna Convention applies.   Moreno pled guilty after hearing the factual basis of the charges and because he was guilty (Doc. cr-112 at p. 24, 26).

None of the facts of Moreno's case take the case outside the heartland of the applicable guideline.  Nothing in prevailing case law indicates that failure to advise a defendant of his Consular Rights under the Vienna Convention is a U.S.S.G. § 5K2.0 departure factor that has been proscribed, encouraged, discouraged, or unaddressed by the Sentencing Commission.  Circumstances justifying a departure must significantly differ from the "heartland" of cases covered by a guideline, and that is not true in Moreno's case.

Because Moreno cannot show that he would have been entitled to a U.S.S.G. §5K2.0 downward departure for the Government's failure to advise him of his Vienna

Convention rights, he cannot show that the outcome of the proceeding would have been different had counsel moved for such a downward departure, and argued for the departure at sentencing. Consequently, Moreno cannot show prejudice under the *Strickland* standard, and this claim does not warrant relief.

The Court is not persuaded by Moreno's contention that the Vienna Convention conveys a "personal" right under the Vienna Convention. Moreno relies, in support of his contention, on *United States v. Superville*, 40 F.Supp.2d 672 (D. Virgin Islands 1999), in which the court held that a voluntary confession extracted beyond the six-hour safe harbor contained in 18 U.S.C. § 3501(c) may be suppressed based upon unreasonable delay in presenting the defendant before a magistrate. (See Memorandum, Doc. cv-7 at p. 17). He also relies on *United States v. Rangel-Gonzales*, 617 F.2d 529, 532 (9th Cir. 1980) to support his claim that he has a "personal" right under the Vienna Convention. However, based on subsequent interpretations of the law (see cases cited above), *Superville* and *Rangel-Gonzales* do not reflect the current status of the law as to whether a defendant has individually enforceable rights under the Vienna Convention. *See Medellin v. Texas*, --- S.Ct.---, 2008 WL 762533 at *11 n4 (Mar. 25, 2008).

Because Moreno's claims have no merit, ground two does not warrant relief, in its entirely.

### Ground Three

Moreno contends that his plea of guilty, conviction and sentence violate the Sixth Amendment. In support, he alleges:

> Mr. Moreno's plea was not a voluntary and intelligent choice among the alternative courses of action open to him because the performance of his counsel fell below an objective standard of reasonableness during the plea

process. Mr. Moreno was prejudiced by the objectively unreasonable performance of counsel during the plea process because, absent the constitutionally deficient performance, there is a reasonable probability he would have pleaded not guilty and proceeded to trial. Prior to trial and during the plea process, counsel affirmatively misadvised Mr. Moreno that there was simply no factual defense to the charges and no chance he could prevail at trial due to the overwhelming weight and quality of the government's evidence. Prior to trial and during the plea process, counsel could have but did not advise Mr. Moreno of the affirmative defense of violation of his rights under Article 36(1)(b) of the Vienna Convention on Consular Relations. In actual fact, counsel simply did not aggressively defend Mr. Moreno and instead simply rushed through the plea proceedings without attention to Mr. Moreno or his case. If, prior to advising Mr. Moreno to plead guilty, trial counsel had conducted an independent investigation of the facts, circumstances, pleadings and laws involved in Mr. Moreno's case, he would have advised Mr. Moreno to instead plead not guilty and to proceed to trial.

Moreno reiterates, in a different form, that trial counsel was ineffective because he told Moreno he had no viable defense to the charges, while Moreno contends he did have the defense that the Government failed to advise him of his Vienna Convention rights. Moreno claims that he would not have pled guilty and would have gone to trial if trial counsel had told him of the Vienna Convention defense. However, as discussed above, the Government's alleged violation of the Vienna Convention did not provide a viable defense for Moreno at trial, and this claim has no merit.

Furthermore, nothing in the record indicates that Moreno was rushed through the plea proceedings. He was the last defendant in the conspiracy to plead guilty. His trial was set for June 6, 2005, and he did not plead guilty until June 3, 2005. (Doc. cr-103 at p. 19). Moreno's trial counsel stated at the sentencing hearing, that he met with Moreno several times before Moreno determined that he would plea guilty. (Doc. cr- 103 at p. 10).

In addition, Moreno has not shown that, "if, prior to advising Mr. Moreno to plead guilty, trial counsel had conducted an independent investigation of the facts, circumstances,

16

pleadings and laws involved in Mr. Moreno's case, he would have advised Mr. Moreno to instead plead not guilty and to proceed to trial."  At the change of plea hearing, the United States Magistrate Judge explained (through a sworn interpreter) the elements of the charges  Moreno faced, (Doc. cr-112 at p. 20-21), and had the Prosecutor read the factual basis of the charges:

> [Prosecutor] Your Honor, if this case were to go to trial, the United States would be able to prove these and other facts beyond a reasonable doubt.
>
> On February 21st of 2005, the United States Coast Guard cutter Midget interdicted a go-fast vessel with four Colombian crew members on board in the eastern Pacific approximately 533 nautical miles southwest of Costa Rica.
>
> The go-fast vessel fled from the Coast Guard team as they approached it.  The Coast Guard then disabled two of the go-fast engines with rifle fire, and the vessel stopped.
>
> At that time the Coast Guard team observed the crew of the go-fast throwing bales of cocaine and other items into the ocean.
>
> The Coast guard team also noticed that the go-fast vessel was on fire and located the four crew members in the water.
>
> The crew members, defendants Edwin Reina Santa, Mr. Moreno, Jesus Betancu and Jaime Cueva, were all brought aboard the U.S. Coast guard vessel for their safety, and the fire was extinguished.
>
> The Coast Guard determined that the go-fast vessel had no flag of nationality, no hull numbers or visible name, and appeared to be stateless.
>
> The government of Colombia was contacted and provided a statement of no objections to the Coast Guard's boarding of the go-fast vessel.
>
> The Coast Guard then determined that the go-fast vessel was a vessel subject to the jurisdiction of the United States and boarded it.
>
> The Coast Guard team located some bales of cocaine on the go-fast vessel as well as recovered some bales of cocaine from the surrounding water.

17

The total amount of cocaine recovered was 44 bales and weighed approximately 1,000 kilograms.

The defendants, including Mr. Moreno, were arrested and later transferred to the Middle District of Florida.

In conclusion, Your Honor, Mr. Moreno admits that he knowingly and willfully agreed to assist in the described cocaine smuggling venture aboard the go-fast and specifically that his role was that of the boat mechanic, a role for which he was to be paid.

(Doc. cr-112 at pp. 22-23).

Moreno confirmed that the facts were true and that he had no dispute about the facts as stated. He agreed that the government would be able to prove the elements of the offenses at trial. (Doc. cr-112 at p. 24). Defense counsel also agreed that the facts were sufficient to satisfy the legal elements of each of the offenses. (Doc. cr-112 at p. 24). In Moreno's case, the facts were what they were, and nothing in the record demonstrates that if defense counsel had conducted an independent investigation of the "facts, circumstances, pleadings and laws involved in Mr. Moreno's case," trial counsel would have advised Moreno to plead not guilty and to proceed to trial.

Moreno has not shown that the outcome of the proceedings in his case would have been different had counsel conducted an independent investigation. Therefore, Moreno has not met the prejudice prong of the *Strickland* standard, and this claim has no merit.

In his affidavit in support of his motion to vacate (Doc. cv-8 at p. 10, ¶ 52) it appears that Moreno claims that his plea was not voluntary, knowing, and intelligent. However, the record affirmatively contradicts Moreno's allegations. Moreno swore, under oath, at the change of plea hearing, that he had discussed the guidelines with his attorney and that he understood how the guidelines applied to his case. (Doc. cr-112 at p. 18). He swore that

18

his  guilty plea had not been induced by promises or assurances from anyone. (Doc. cr-112 at p. 13).  He also swore that he was satisfied with his attorney's representation. (Doc. cr-112 at pp. 7-8).  He swore that he was entering his guilty plea because he was guilty. (Doc. cr-25, 26).  He swore that, despite the fact that he was not the owner of the cocaine, he was prepared to accept the responsibility for being part of the conspiracy to distribute it as alleged in the indictment. (Doc. cr-112 at p. 25). He swore that he knowingly joined in the conspiracy to deliver the cocaine. (Doc. cr-112 at p. 25).  The United States Magistrate Judge found that Moreno was competent, and that his plea was knowing, intelligent, and voluntary, "and that it is supported by the factual statement to which he has agreed." (Doc. cr-112 at p. 26).

A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *cf. Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir.1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge*, 431 U.S. at 73-74; *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.1994). They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Blackledge*, 431 U.S. at 73-74; *see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n. 8 (11th Cir.1987); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11th Cir.1985); *Potts v. Zant*, 638 F.2d 727, 750-51 (5th Cir.1981) (citing *United States v. Sanderson*, 595 F.2d 1021 (5th Cir.1979)); *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir.1997); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir.1995); *United States v. Mims,* 928

F.2d 310, 313 (9th Cir.1991); *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir.1991).

Consequently, a defendant "bears a heavy burden to show his statements [under oath] were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988); *United States v. Reid*, 2007 WL 4190403 (11th Cir.2007)(unpublished; text in WESTLAW).

Moreno has not met his burden to show that his sworn statements at the change of plea hearing were false, and has not shown that counsel's conducting an independent investigation of the facts which Moreno swore were true, would have led trial counsel to advise Moreno to plead not guilty and to proceed to trial.

For the above reasons, ground three, in its entirety, does not warrant relief.

Ground Four

Moreno contends that counsel was ineffective due to the cumulative impact of multiple deficiencies or errors by counsel during the sentencing process.

In support, Moreno alleges:

> Counsel unprofessionally failed to timely, properly, and effectively move for suppression of evidence material to the sentence of Mr. Moreno and counsel could have but did not timely move for dismissal of the indictment based on the absence of jurisdiction for the charges. Alternatively, counsel could have but did not move to dismiss charges based on absence of venue in the Middle District of Florida for an offense which occurred in the Pacific Ocean.  But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.  Counsel unprofessionally failed to investigate or present available evidence material to the sentencing of Mr. Moreno.  Counsel also unprofessionally failed to object to unlawful, false and unreliable evidence used to determine Mr. Moreno's guideline sentencing range and ultimate sentence.  But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different. Mr. Moreno was prejudiced by the objectively unreasonable performance of counsel during the sentencing process, when counsel unprofessionally failed to move for appropriate downward departure in Mr. Moreno's case.  But for counsel's unprofessional error there is a reasonable probability that the outcome of the proceeding would have been different.  Mr. Moreno's counsel

20

labored under an actual conflict of interest which adversely affected his performance during the sentencing process in this case. Counsel owed a duty other than to Mr. Moreno.  This duty was in conflict with the duty owed to Mr. Moreno.  Counsel chose between the duties. This duty adversely affected the performance of counsel during the sentencing process.

## A. Jurisdiction

Moreno claims that "Counsel unprofessionally failed to timely, properly, and effectively move for suppression of evidence material to the sentence of Mr. Moreno and counsel could have but did not timely move for dismissal of the indictment based on the absence of jurisdiction for the charges.  Alternatively, counsel could have but did not move to dismiss charges based on absence of venue in the Middle District of Florida for an offense which occurred in the Pacific Ocean.  But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different."

Moreno's claim fails because Moreno pled guilty and agreed that he was aboard a vessel subject to the jurisdiction of the United States when the crimes occurred.  The United States' jurisdiction was based on the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 1903(a),(g), and (j).

The MDLEA specifically provides that "Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense.  All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge."  *United States v. Madera-Lopez*, 190 Fed. Appx. 832 (11th Cir. 2006) (citing 46 U.S.C. App. § 1903(f))).  The Eleventh Circuit has rejected constitutional challenges to the MDLEA. *See United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir.2003) (rejecting argument that MDLEA is unconstitutional because the conduct at issue lacks nexus to United States); *United States v. Mena*, 863 F.2d 1522, 1527 (11th Cir.1989) (rejecting a

21

facial challenge to the MDLEA based on a lack of a "meaningful relationship" to the United States); *United States v. Tinoco*, 304 F.3d 1088, 1110 n. 21 (11th Cir.2002) (rejecting *United States v. Gaudin*, 515 U.S. 506 (1995) due process challenge to provision in MDLEA, 46 U.S.C. App. § 1903(f), which provides that "[a]ll jurisdictional issues arising under [the MDLEA] are preliminary questions of law to be determined solely by the trial judge" ).Under the MDLEA, the United States had jurisdiction over the go-fast vessel and over Moreno.  Furthermore, venue was proper in the United States District Court for the Middle District of Florida, Tampa Division, because under 46 U.S.C. § 70504 (formerly, 46 App. U.S.C. § 1903), a person violating 46 U.S.C. § 70504 (formerly 46 App. U.S.C. § 1930) shall be tried in the district court of the United States for 1) the district at which the person enters the United States; or 2) the District of Columbia. In Moreno's case, the United States Coast Guard transferred custody of the defendants to the United States Marshal's Service in the Middle District of Florida, Tampa, Florida, and the defendants, including Moreno, entered the United States in the Tampa Division of the United States District Court for the Middle District of Florida. (See PSR at p. 2 ¶ 13).

Moreno cannot show that the outcome of the proceeding would have been different had counsel performed as Moreno suggests because the United States had jurisdiction under the MDLEA and venue was proper in the United States District Court for the Middle District of Florida, Tampa Division.  Defense counsel's challenging the Court's jurisdiction and/or venue would not have resulted in suppression of the evidence or dismissal of the indictment. Moreno has not met either prong of the *Strickland* standard and this claim has no merit.

**B. Additional Claims**

Moreno's additional claims of ineffective assistance of counsel either have been addressed in another part of this order; or have no merit because Moreno has not sufficiently pled facts to support the claims. Devoid of any factual support, these allegations are  insufficient to obtain relief under § 2255 . See *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir.2001) (noting that habeas relief is not warranted when claims are merely conclusory allegations unsupported by specifics); *see Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

### No Evidentiary Hearing Necessary

*Hill v. Lockhart* does not require an evidentiary hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations. *Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir.1989)(citing and quoting *Guerra v. United States*, 588 F.2d 519 (5th Cir. 1979)("a hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the defendant's allegations are affirmatively contradicted by the record. *id* at 520-21).   In the present case, Moreno's allegations are affirmatively contradicted by the record.

**Accordingly, the Court orders:**

That Moreno's 28 U.S.C. § 2255 motion to vacate (Doc. cv-6; cr-125) is denied.  The Clerk is directed to enter judgment against Moreno in the civil case and to close that case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 11, 2008.

SUSAN C. BUCKLEW
United States District Judge

AUSA: Matthew Hart Perry
Libardo Moreno-Gonzales a/k/a Huber Moreno